531 P.2d 1167

**In the Matter of the ESTATE of Ruth D. BOGERT, Deceased.**

**Rozalys B. SMITH and E. A. "Dee" Bogert, personal representatives, Appellants,**

v.

**Edmund A. BOGERT, Sr., Respondent.**

No. 11624.

Supreme Court of Idaho.

Feb. 6, 1975.

Louis H. Cosho of Clemons, Cosho Humphrey & Samuelsen, Boise, for appellants.

Thomas B. Campion of Kneeland, Laggis & Korb, Ketchum, for respondent.

BAKES, Justice.

This case presents the question of the status of securities which were acquired with community property and which were held by a husband and wife in a stock account with a brokerage firm, which account was designated as a joint tenancy account with right of survivorship.

Decedent Ruth D. Bogert, who was married to Edmund A. Bogert, Sr., died testate on November 22, 1972. In her will she devised all of her property to the Bogerts' three children. Two of those children survived her and they, appellants Rozalys B. Smith and E. A. "Dee" Bogert, were des-

ignated the personal representatives of her estate. They claim that the stock held in a joint tenancy account with Birr, Wilson & Co., Inc., a stock brokerage firm in Boise, Idaho, worth approximately $354,000.00, was in fact community property, and thus one half of those stocks should be included in the probate estate. Respondent, Edmund A. Bogert, Sr., the decedent's husband, claims that he and his wife held the stocks in the Birr, Wilson account as joint tenants with right of survivorship, and thus those stocks passed directly to him, outside of the will, by right of survivorship and should be excluded from the decedent's probate estate.

Trial was held in the Magistrates Division of the district court, and in that trial Edmund A. Bogert, Sr., was the only witness. In support of his joint tenancy claim he testified as follows:

"Q. When, if you know, was that account opened with Birr and Wilson?

"COURT: You may proceed again, ask your last question.

"A. I had the account with Walston and Company and I changed it to Birr, Wilson.

"Q. And at the time you changed it did you, well, let me strike that, there is attached to the Petition a copy of a joint tenancy agreement between you and Mrs. Bogert and Birr, Wilson. Did you execute that at the time you opened this account?

"A. Right about that time.

"Q. Did you have a joint tenancy agreement with brokers prior to that time?

"A. Yes, and Rush Company too. Mrs. Bogert and I had everything jointly owned together.

.    .    .    .    .    .

"MR. KNEELAND: Now, did you discuss with her what would happen in the event of death of either one of you?

"MR. BOGERT: Yes and we each thoroughly understood, we always went over it.

"MR. KNEELAND: And what was your intention in the event of death?

"MR. BOGERT: If I died first she would get the securities, and if she died first I would get the securities.[1]

"MR. KNEELAND: And did she say to you that that was  .  .  .  .

"MR. BOGERT: That was alright with me." (Rptr. Tr., pp. 78, 81).

There was no other testimony relative to the intent of the parties regarding the ownership of this $354,000 account in the event of death of one of them. A copy of the joint tenancy stock account was attached to the pleadings and was part of the record before the magistrate.[2]

The personal representatives of the estate introduced no evidence at that hearing. The magistrate ruled that while spouses could transmute community proper-

---

1. The phrase, "and if she died first I would get the securities," was not in the original transcript, but was apparently stipulated to by counsel before the court as the testimony of Mr. Bogert, according to finding of fact X of the district judge. Clerk's Tr., pp. 132–133.

2. The relevant provision of the agreement is:
"4. In the event of the death of any Tenant, the entire interest in the joint account as of the close of business on the date of the death of the decedent (or on the following business day if the date of death is not a business day) shall be vested in the surviving tenant or tenants on the same

terms and conditions as theretofore held
   .  .  .  ."
The agreement is headed by a large type, capitalized phrase, "AUTHORIZATION TO OPEN ACCOUNT FOR JOINT TENANTS WITH RIGHT OF SURVIVORSHIP." It is on a single sheet of paper containing five numbered paragraphs twenty-eight lines in length. The agreement provides in two distinct places for the signatures of the parties to the account, both of which were signed by Edmund A. and Ruth D. Bogert, the first of which was followed by the phrase, "as Joint Tenants with Right of Survivorship," and the second of which was followed by the phrase, "Joint Tenants with Right of Survivorship and not as Tenants in Common."

ty into joint tenancy with right of survivorship, the intention to so transmute the property must be shown by clear and convincing evidence. The magistrate concluded that the evidence introduced in support of that transmutation was not clear and convincing, and therefore the stocks were the community property of the decedent and Edmund A. Bogert, Sr., and ordered Edmund A. Bogert, Sr., to turn over one half of the community property stocks to the personal representatives of the decedent's estate.

Edmund A. Bogert, Sr., appealed to the district court which, reviewing the transcript of proceedings before the magistrate ruled that "[s]ecurities on deposit in a joint tenancy brokerage account belong entirely to the surviving joint tenant unless there is clear and convincing evidence of a contrary intent at the time the account was created." Having reversed the burden of proof from that applied by the magistrate, and finding no evidence of a "contrary intent," the district court held that the securities were in fact held in joint tenancy with the right of survivorship, and ordered the personal representatives to turn the securities back over to Edmund A. Bogert, Sr. The personal representatives have appealed the ruling of the district court.

This Court has previously decided a number of cases involving the question of ownership of property allegedly held in joint tenancy. In re Estate of Cooke, 96 Idaho 48, 524 P.2d 176 (1974); Vaughn v. First Federal Savings & Loan Association, 85 Idaho 266, 378 P.2d 820 (1963); In re Estate of Chase, 82 Idaho 1, 348 P.2d 473 (1960); Idaho First National Bank v. First National Bank of Caldwell (the *Griffiths* case), 81 Idaho 285, 340 P.2d 1094

(1959); Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380 (1958); Gray v. Gray, 78 Idaho 439, 304 P.2d 650 (1956). In addition, the Uniform Probate Code, I.C. § 15–1–101 et seq., was enacted, effective July 1, 1972, and since the decedent in this case died after that date the first question which we must decide is whether or not I. C. § 15–6–104(a) is applicable to this case. That section provides:

"15–6–104. *Right of survivorship.*— (a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent if an intent to give the account can be shown by the surviving party or parties . . . ." [3]

■ The first question which must be decided is whether or not I.C. § 15–6–104 is applicable to the stock account in this case. While it is unclear from the transcript in the matter whether or not the stocks which are the subject matter of this proceeding were held jointly in the name of the decedent and her husband, or whether they were held by the brokerage firm in its name, it is our view that there was no "account" as that term is defined in § 15–6–101 and used in § 15–6–104. § 15–6–101 defines an account as follows:

" 'Account' means a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement."

In order for there to be an "account" there must be a "deposit of funds between a depositor and a financial institution . . . ." [4] A stock brokerage firm

---

3. The *Cooke* case preceded the enactment by the legislature of I.C. § 15–6–104(a) concerning joint bank accounts. However, the *Cooke* case still has precedential value when applied to types of joint tenancy property other than "accounts." At least one writer has suggested that I.C. § 15–6–104(a) codified the rule in the *Griffiths* case, 81 Idaho 285, 340 P.2d 1094 (1959). *See* Peterson, Idaho

Uniform Probate Code, a Bird's Eye View, 9 Idaho L.Rev. 133, at 143, fn. 29 (1973). The *Griffiths* rule was the basis for this Court's holding in the *Cooke* case, as quoted in In Re Chase's Estate, 82 Idaho 1, at p. 8, 348 P.2d 473 (1960).

4. "Financial institution" is defined in § 15–6–101(3) as " . . . any organization au-

which is handling a brokerage account for a person investing in stocks cannot be fairly construed to be a "financial institution" and the investor a "depositor" of funds. In our view, investments in stocks through the means of a stock broker, regardless of whether or not the securities are held in the name of the investor or the stock brokerage firm, are not the "deposit of funds" in a "financial institution" contemplated in the definition of "account" in § 15–6–101(1).

■ Having concluded that I.C. § 15–6–104 is inapplicable to the case before us, we are presented with the task of determining the applicable law. If the Bogerts had transmuted the securities in the account from community property to property owned in joint tenancy with a right of survivorship, each would have made a gift to the other of his or her interest in the community property, including the right to devise one half of the community property at death, and would have received as a gift a separate property interest in joint tenancy. In re Estate of Cooke, *supra.* In past cases we have required that the intent to make a gift under similar circumstances be shown by clear and convincing evidence. In the case of In re Estate of Cooke, *supra,* we held that the intent of a decedent-depositor to a joint bank account to have made a gift must be proved by clear and convincing evidence. In Vaughn v. First Federal Savings & Loan Association, *supra,* we held that the intent to establish a savings account (Totten) trust, which became effective upon the settler's death, must be shown by clear and convincing evidence. In the case of Estate of Randall, 64 Idaho 629, 132 P.2d 763, rehearing denied, 135 P.2d 299 (1943), we held that where the executrices of an estate claimed that certain certificates of deposit and warehouse receipts previously owned by the decedent, whose estate they were administering, had been given to them and were not part of the probate estate that they must establish the donor's intent to make such a gift clearly and unequivocally. 64 Idaho at 640, 132 P.2d 763. In these cases in which family members have been claiming that the decedent left them certain property as a gift effective at or near death, we have required that the decedent's intention to make such a gift be demonstrated by a quantum of proof greater than a preponderance of the evidence.

■ We thus conclude that the magistrate applied the correct rule of law when he required that the survivor to the joint account show by clear and convincing evidence that the deceased party to the account intended that the stock in the account pass to the survivor by right of survivorship. "In this jurisdiction, whether a 'clear and convincing' burden of proof has been met is a question for the trier of facts to decide in the first instance." In re Estate of Cooke, *supra,* 96 Idaho at 55, 524 P.2d 176; Vaughn v. First Federal Savings & Loan Association, *supra.* The magistrate had the primary responsibility for weighing the evidence. He alone observed the witness testify, and for that reason his finding that the plaintiff's claim was not shown by clear and convincing evidence is entitled to great weight on appeal. *See* Thomas v. Thomas, 83 Idaho 86, 357 P.2d 935 (1960), where this Court affirmed the trial court's dismissal of the plaintiff's complaint at the end of plaintiff's case in chief, on the ground that the plaintiff had not met his burden of establishing his claim by clear and convincing evidence. *See also* Fredricksen v. Fullmer, 74 Idaho 164, 258 P.2d 1155 (1953), where this Court set aside the plaintiff's claim, which the district court had granted, even though the opinion does not record any evidence introduced adverse to the claim, on the ground that the plaintiff had not met its burden of showing its case by clear and convincing evidence.

thorized to do business under state or federal laws relating to financial institutions, including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan companies or associations, and credit unions.

Accordingly, we cannot say as a matter of law that the magistrate was incorrect in concluding that the burden of the clear and convincing evidence test had not been met.

The judgment of the district court is reversed and the matter remanded for further proceedings consistent with this opinion. Costs to appellants.

McFADDEN, DONALDSON and SHEPARD, JJ., and THOMAS, D. J., concur.