657 P.2d 494

**Leta V. ERHARDT, Plaintiff-Respondent,**

v.

**George Robert LEONARD,
Defendant-Appellant.**

No. 13820.

Court of Appeals of Idaho.

Jan. 19, 1983.

Lloyd J. Webb, of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendant-appellant.

John Hohnhorst, of Hepworth, Nungester & Felton, Twin Falls, for plaintiff-respondent.

WALTERS, Chief Judge.

George Leonard appeals from a judgment awarded against him for compensatory and punitive damages. The judgment resulted from a claim that he wrongfully had converted to his own use money on deposit in a joint savings account in a local bank, which account appeared in his name and the name of his grandmother, Leta V. Erhardt.

We are presented with several issues on this appeal. Did the grandson have a right of ownership in the joint account that entitled him to withdraw the funds at his convenience and without the permission of his grandmother? After he withdrew the funds, was the grandmother entitled to reimbursement in full from the grandson or did the withdrawal terminate her right to the funds? Did the grandson's behavior warrant a judgment of punitive damages against him? Did the trial court err in making certain evidentiary rulings at trial? Should attorney fees be awarded on appeal to either party?

The essential facts in this case are not disputed. As noted in the grandson's opening brief on appeal, the substantive issues are ownership of the joint account and the grandson's right, or lack of right, to expend the funds from the account.

The account was opened by the grandmother in 1967, in her name and the name of her grandson, George, who was then fifteen years old. He was the only lineal grandson of the grandmother's first husband. She was very close to the grandson and thought highly of him. He lived with his parents in a house directly across the country road from where the grandmother lived, and he visited her nearly every day. At trial, the grandson testified that when his grandmother requested him to sign the signature card for the joint savings account, she told him the account was for his benefit.

After signing the signature card, the grandson returned home and informed his father, Merl Leonard, about the joint savings account. The following day, Merl questioned the grandmother about what she had done. She stated that she was sure she wanted to have the grandson's name on the account; but she never mentioned that she had intended to make a gift of the funds in the account to the grandson.

In 1968, the grandmother established a trust to hold title to a forty-acre farm for the benefit of the grandson, the sole beneficiary of the trust. Although close in time to the opening of the joint savings account, no direct evidence was presented at trial concerning any relationship between the creation of the trust and the opening of the joint account.

Initially the joint account was funded with a deposit by the grandmother of $5,000. In July, 1971, she deposited another $5,000 in the account. At the time of the second deposit, the grandmother did not discuss her actions with either Merl or the grandson, nor did she mention any intent to make a gift of the funds. No other deposits were made to the joint savings account, other than interest credited by the bank.

In 1972, the grandmother broke her hip, after which she was limited in her activities. She appointed her son, Merl, as her attorney-in-fact, to handle her financial affairs. Thereafter, Merl obtained possession of the passbook to the joint savings account. He gave the passbook to the grandson with-

out the grandmother's knowledge or consent.

In 1973, the grandmother requested and received the return of the forty acres she had deeded in trust. This was apparently due to discontent in the family caused by the favoritism shown to the grandson.

The ownership of the bank changed hands in 1974, and both the grandmother and the grandson were requested to sign a new signature card on the joint savings account. They complied. All bank statements for the joint account were sent to the grandmother's address. No request was ever made to have correspondence from the bank mailed to the grandson. At all times from the opening of the account, the grandmother reported the interest to the account as her income for tax purposes.

In January, 1976, the grandson withdrew the entire balance of $13,677.57 from the joint savings account. He never received permission to do so from his grandmother, nor did he tell her of the withdrawal. He testified he understood that the money had been given to him.

The grandmother requested her son Carl Leonard, Merl's brother, to check on the status of the joint savings account in September, 1978. Carl discovered that the grandson had withdrawn all the funds. The grandmother became upset at this news, and after discussing the matter with her son Merl, terminated Merl's power of attorney. She then appointed her son Carl as her attorney-in-fact, and asked him to recover the funds taken from the joint savings account by the grandson.

A letter was sent to the grandson on September 29, 1978, demanding return of the entire sum of $13,677.57 plus interest from the date of the withdrawal. In the letter, the grandmother emphatically stated that she had never had any intent to give the funds to the grandson.

After the grandson received the letter, he disregarded the grandmother's demand and used the money as a down payment on a house in Twin Falls, Idaho. The grandmother then commenced this suit to recover the funds.

Following trial to the court, the district judge determined that all of the funds in the joint savings account had been deposited by the grandmother, that no clear and convincing evidence existed to show any intent by her to make a gift of the funds in the account to the grandson, and that the grandson had wrongfully withdrawn the money from the account and was liable for repayment. General damages in the amount of $18,410 were awarded to the grandmother for the principal amount of the funds taken together with interest. In addition to this liability, the judge awarded punitive damages of $6,133.33 against the grandson due to his withdrawal of the funds, his silent retention of those funds, and his use of the funds after receiving the letter demanding return of the funds.

The first issues we will address concern the ownership of the funds in the joint account, and the effect on that ownership made by the grandson's withdrawal of the funds. The grandson contends that he had a right to withdraw the funds in the account because he was a joint tenant, that there was nothing improper about his withdrawal of the funds, and that the withdrawal terminated all ownership rights the grandmother had in the funds. We disagree.

A joint savings account is a contractual agreement between a financial institution and the named depositors. *In re Chase's Estate,* 82 Idaho 1, 348 P.2d 473 (1960). Account contracts, such as the joint savings account in this case, define the power of withdrawal held by each party to the account, as a means of protecting the financial institution. *See* I.C. § 15–6–102. But the actual ownership of the funds in the account is not affected by the account contract. *Idaho First National Bank v. First National Bank of Caldwell,* 81 Idaho 285, 294, 340 P.2d 1094, 1099 (1959).

During the lifetime of the parties to a joint account, ownership of the funds in the account is determined by the net contributions of each party to the account,

unless there is clear and convincing evidence of a different intent. I.C. § 15–6–103(a). Establishment of a joint account may effect a gift by the depositor to the other party or parties to the account. *Idaho First Nat. Bank, supra; Gray v. Gray,* 78 Idaho 439, 304 P.2d 650 (1956). In determining the effect of a joint account agreement, the significant consideration is the intent of the depositor. The party asserting that a gift was intended must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence. *Matter of Estate of Lewis,* 97 Idaho 299, 543 P.2d 852 (1975); In re *Bogert,* 96 Idaho 522, 531 P.2d 1167 (1975); *Idaho First Nat. Bank, supra.*

■ Both the grandmother and the grandson were parties to the joint savings account. The grandson was a non-contributing party; only the grandmother had made contributions to the sums on deposit in the account. Pursuant to I.C. § 15–6–103(a), absent clear and convincing proof of a contrary intent, the grandmother was the sole owner of the funds in the account. *See also* I.C. § 15–6–101(6). The grandson's withdrawal of the funds was an invasion of her property.

■ The grandson asserts that the circumstances surrounding establishment of the joint account, as well as statements by the grandmother, indicated her intent to make a gift of the account to him. Whether clear and convincing proof of an intent to make a gift has been shown is a question for the trier of fact. *In re Bogert, supra.* The trial judge's determination on this point will not be set aside unless it is clearly erroneous. I.R.C.P. 52(a); *In Re Estate of Courtright v. Robertson,* 99 Idaho 575, 586 P.2d 265 (1978). Here, the judge, sitting as trier of fact, found there was no clear and convincing evidence that the grandmother ever intended to make a gift of the funds in the account to the grandson. This was a central part of the dispute between the parties, and each side introduced evidence that conflicted with the other side's perception of the grandmother's intent regarding these funds.

■ The grandson contends that the grandmother was "senile" and made contradictory statements throughout the course of this lawsuit, from the time of her deposition through the trial. He claims she was an incompetent witness and her testimony should be given little weight. A long standing maxim of appellate procedure, however, prevents this Court from substituting its opinion of a witness's credibility for that of the trier of fact. The trier of fact can observe the witness testify, and for that reason his finding concerning whether or not the burden of proof is met is entitled to great weight on appeal. *In re Bogert, supra.* We have reviewed the transcript of the trial of this case. In our opinion the finding—that there was no clear and convincing evidence that the grandmother ever intended to or did make a gift of the funds in the account to her grandson—is not clearly erroneous. We will not disturb that finding on appeal. I.R.C.P. 52(a).

■ The grandson also maintains that his withdrawal of the funds was not a wrongful act and could not give rise to a claim of conversion. Again, we disagree. Conversion has been defined as an act of dominion wrongfully exerted over the personal property of another in denial of, or in unwarranted interference with, his rights therein. *Adair v. Freeman,* 92 Idaho 773, 777, 451 P.2d 519, 523 (1969).

The grandson invites our consideration of *Warm Springs Properties, Inc. v. Andora Villa, Inc.,* 96 Idaho 270, 526 P.2d 1106 (1974). However, in that case our Supreme Court simply held that an action based upon conversion, for misappropriation of money, does not lie unless the money can be specifically described or identified. In the present case, the funds in the account came solely from the grandmother. Moreover, the trial court specifically found that, after the funds were withdrawn, they were placed by the grandson into two successive, separate accounts and were never comingled with any other funds. Thus, at all relevant times the funds were subject to specific description—the amount never changed—

and to specific identification—the evidence of withdrawals and deposits of the same amount was consistent. The finding that the money was subject to specific description and identification is supported by competent evidence; and we will not disturb it on appeal. I.R.C.P. 52(a).

The grandson intimates that using the funds from the account to purchase real property rendered the money no longer identifiable under *Warm Springs Properties, Inc., supra.* We disagree. In *Warm Springs* the allegedly converted money was comingled into a general checking account by a third party who was not charged with conversion. Andora Villa, the party charged with liability because of the conversion, simply had received the benefit of the use of funds from the third party's general account. Here the party who converted the funds was also the party who made use of the funds as a down payment on his house, after his grandmother had demanded return of the funds. In our opinion, this should not defeat the grandmother's right of recovery. At the time she made demand for a return of the funds, the funds were readily segregated and identifiable. We conclude that the act of investing in real property with proceeds wrongfully obtained should not defeat the owner's right of possession of the funds taken from the bank account. *Accord, Allen v. Allen,* 275 Or. 471, 551 P.2d 459 (1976).

The next issue we address is the grandson's assertion that punitive damages were not properly awarded against him. The trial court determined that the grandson's "willful, wrongful and secretive withdrawal of the funds of the savings account, his silent retention of those funds and his final attempt at alienation of the funds after receiving [the] unmistakable demand for the return of funds still in his possession constitute malicious, wanton, gross and outrageous conduct in disregard of the rights of the [grandmother]." The punitive damages award was explicitly based upon one of the grounds for punitive damages recognized in *Cox v. Stolworthy,* 94 Idaho 683, 691, 496 P.2d 682, 690 (1972). That is, in a situation where a defendant has exhibited conduct which is nonviolent, but nevertheless is a serious invasion of one's rights to personal or real property, the trier of fact may award an amount calculated to reimburse the plaintiff's necessary and reasonable attorney fees and other related expenses, as exemplary damages. *Id.*

While the categories established in *Cox* have been narrowed somewhat by the language of later cases, the trial court's findings in this case are, in our view, sufficient to support an award of punitive damages. The award was calculated to reimburse the grandmother for a reasonable attorney fee necessarily incurred to recover her property. We uphold the award.

Finally, the grandson contests certain rulings made by the trial court in the exclusion and admission of evidence. He contends the court erred in refusing to allow Merl Leonard to testify as to his "understanding as to what was intended" "by the bank account. He also contends that the trial court erred in allowing in evidence the grandmother's financial condition at the time of trial. Lastly, he argues that the findings of the trial court contain innuendos of impropriety on the part of Merl Leonard, which innuendos were totally unwarranted, and indicated a prejudicial attitude on the part of the trial judge.

Both of the evidentiary rulings were made on the basis of relevancy, i.e., the probative value of the evidence. We are unpersuaded that we should superimpose our judgment upon that of the trial court regarding the relevancy of the evidence in question in this case. *See State v. Alvord,* 47 Idaho 162, 174, 272 P. 1010, 1013 (1928); G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER, 2d Ed., 107 (1972). In a court trial, the judge has greater latitude to admit evidence and to evaluate its weight, than in a jury trial. *Guillard v. Department of Employment,* 100 Idaho 647, 603 P.2d 981 (1979).

Merl Leonard's understanding as to what was intended by the bank account was not at issue in this case. He was allowed to

testify about conversations with the grandmother concerning the bank account. We hold the court did not commit error in excluding his testimony regarding his "understanding" of what was intended by the account.

Regarding the admission of the testimony about the grandmother's financial condition, there is no showing that the evidence in question was misleading or that it resulted in surprise. In any event, the judge's final decision did not turn upon the grandmother's financial condition. *Guillard, supra.*

As to the contention of prejudice, we do not view the trial judge's findings as a comment upon the conduct of Merl Leonard. Regarding the impact of those findings on the grandson, we are not persuaded that prejudice can be inferred from the findings themselves. We have reviewed those findings under the standard prescribed by Rule 52(a), I.R.C.P., and they will not be disturbed.

The judgment of the trial court is affirmed. Both parties have requested an award of attorney fees for representation in this appeal. The appeal was neither brought nor defended frivolously, unreasonably, or without foundation. It raised genuine legal issues regarding the rights of the parties to the account in question. Accordingly, we award no attorney fees. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Costs to respondent, Leta Erhardt.

SWANSTROM and BURNETT, JJ., concur.