787 P.2d 252

**In the Matter of the ESTATE OF Esther ASHE; aka Esther F. Ashe, Deceased.**

**Sam ASHE, Plaintiff-appellant,**

v.

**Jack HURT, Michael R. Hurt, Allen L. Hurt, Brett W. Hurt, Adam L. Hurt, Kevin L. Hurt, Timothy Hurt, individuals; and James E. Schiller, in his capacity as Personal Representative of the Estate of Esther Ashe, deceased, Defendants-respondents.**

**No. 17554.**

Supreme Court of Idaho.

Feb. 6, 1990.

Hawley Troxell Ennis & Hawley, Boise, for plaintiff-appellant. Merlyn W. Clark, argued.

Gary L. Morgan, Caldwell, for defendants-respondents.

BAKES, Chief Justice.

In this probate proceeding, Sam Ashe, the husband of the deceased Esther Ashe, filed a petition which sought (1) to classify a certain brokerage account as a joint tenancy, and thus petitioner's separate property as the surviving tenant, and (2) to classify certain real property as community property. The deceased's children by a prior marriage, Jack Hurt *et al.*, filed a response which sought (1) to classify the brokerage account as community property and thus subject to the provisions of the deceased's will which left the deceased's share to them, and (2) a determination decreeing that the real property had previously been effectively deeded to Jack Hurt and therefore was neither community property nor a part of the deceased's estate. After a magistrate's hearing, plaintiff Ashe's petition was denied. On appeal, the district court upheld the magistrate's decision. On

further appeal, the Idaho Court of Appeals affirmed. *Ashe v. Hurt*, 114 Idaho 70, 753 P.2d 281 (Ct.App.1988). We granted review only as to the decision denying petitioner's claim that the brokerage account was his separate property. Following the original argument, the case was set for reargument to address additional issues discussed more fully below.

The factual background of this case is fully and accurately set out in the Court of Appeals opinion. *See Ashe v. Hurt*, 114 Idaho 70, 753 P.2d 281 (Ct.App.1988). In sum, this case involves a joint tenancy account established between a husband and wife from funds which were the community property of the spouses.[1] The trial court (magistrate) held that Sam Ashe had the burden of proving by clear and convincing evidence that Esther intended the creation of a joint tenancy with right of survivorship in order to change the community nature of the funds which went into the account to joint tenancy. The magistrate concluded that Sam Ashe had not met his burden of proof. The magistrate found that "the burden of proof is not sustained that Esther knowingly and intentionally elected the joint tenancy account with right of survivorship. Specifically, the court finds that Sam Ashe made the decision and Esther merely acquiesced." The magistrate made that finding after noting that "Esther did not have the necessary legal knowledge and was furnished with insufficient information to have caused her to believe that signing the joint tenancy agreement would override her intent to dispose of her one-half of the property in her will." The district court and the Court of Appeals affirmed the trial court's findings and its legal conclusions on appeal.

We granted appellant's (Ashe's) petition for review based upon his request that this

---

1. In the proceedings below a substantial amount of time was spent by petitioner attempting to trace the property in question through the various accounts to prove that its original source was either Sam Ashe's separate property or the joint tenancy property of Sam and Esther Ashe. The Court of Appeals opinion accurately traces the various account changes to which these funds were subjected. During oral argument to

this Court, counsel for appellant Ashe recognized that there was substantial evidence supporting the lower courts' determination that the account was established with community property, and counsel assumed that for purposes of the review before this Court the property which went into the joint account in question was community property.

Court reconsider our case of *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975), and the rule that requires clear and convincing evidence to establish the intent of the parties to a joint tenancy account. Following argument, we requested the parties to brief and to address on reargument the issue of "whether § 15–6–104 of the Uniform Probate Code as adopted by Idaho, is applicable to the account in this case," and it is this issue which we first address.[2]

I

■ I.C. § 15–6–104 reads in pertinent part:

> 15–6–104. Right of survivorship.—(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent if an intent to give the *account* can be shown by the surviving party or parties.... (Emphasis added.)

I.C. § 15–6–101 defines "account" as follows:

> (1) "Account" means a contract *of deposit of funds between a depositor and a financial institution,* and includes a checking account, savings account, certificate of deposit, share and other like arrangement. (Emphasis added.)

I.C. § 15–6–101(3) defines "financial institution" as "any organization *authorized to do business under state or federal laws relating to financial institutions,* including, without limitation, banks and trust companies, savings banks, building and loan associations, savings and loan companies or associations, and credit unions." (Emphasis added.)

Construing these same provisions in *Bogert*, we held in part that "a stock brokerage firm which is handling a brokerage account for a person investing in stocks cannot be fairly construed to be a "financial institution'...."

Ashe contends that the holding in *Bogert* is inapposite because the account in the present case is unlike the "simple stock account" at issue in *Bogert.* Ashe contends that his cash management account with Merrill Lynch falls within the meaning of "account" as that term is defined by 15–6–101(1), because it included a checking account, VISA cards and a savings account in addition to brokerage account services. Ashe argues further that Merrill Lynch is a "financial institution" as the term is defined in I.C. § 15–6–101(3) because the list of financial institutions in that provision, while not including stock brokers, is not exhaustive; and that Merrill Lynch "is an organization authorized to do business under state and federal laws relating to financial institutions."

After carefully reviewing the entire record in this case, we are unable to discover sufficient evidence of the nature of the business structure of the Cash Management Account involved here, and any "state and federal laws relating to financial institutions" under which Merrill Lynch is operating its Cash Management Account business in order to come within the meaning of "financial institution." We emphasize that our holding does not categorically preclude all future litigants from demonstrating that Merrill Lynch and other stock brokerage firms may indeed be found to be "financial institutions" as contemplated by I.C. § 15–6–101(3). We simply find that *this record* does not establish that claim.

II

■ Accordingly, I.C. § 15–6–104 is inapplicable to this case, and our decision rests on the rule delineated in *Bogert,* that the surviving party to the joint account must prove by clear and convincing evidence that the parties to the account intended to make a gift. This is the rule that was applied by the magistrate court and confirmed on appeal. We need not reiterate the detailed analysis provided in the Court of Appeals

---

**2.** In *Bogert* we stated that "[t]he first question which must be decided is whether or not I.C. § 15–6–104 is applicable to the stock account in this case." We concluded that I.C. § 15–6–104 was not applicable because the joint stock account in that case was not an "account" as that term is defined in I.C. § 15–6–101.

opinion on this matter, but simply note our concurrence.

To examine the validity of the rule of *Bogert* was the initial issue for which we granted review. The common law rules governing the distribution and quantum of proof burdens relative to joint account cases are multivariate. A vortex of controversy and uncertainty has attended every approach to the problem adopted by the various states. Creation of a Joint Tenancy Bank Account With Right of Survivorship, 24 Ark.L.Rev. 361 (1970); Joint Bank Accounts—Search for a Solution, 88 Dick. L.Rev. 631 (1984); Co-ownership of Bank Accounts and Stock Certificates, 6 Okl.L. Rev. 107 (1953). We are not unmindful of the criticisms applied to these rules and our own rule, but find such criticism insufficiently compelling to depart from a rule now well established in our case law. *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975).

The judgment below is affirmed. Costs to respondent. No attorney fees allowed.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, specially concurring.

Having concurred in the opinion of Chief Justice Bakes, I write only to add that the "clear and convincing" rule of *Bogert* was not original to that case, as pointed out therein:

In past cases we have required that the intent to make a gift under similar circumstances be shown by clear and convincing evidence. In the case of *In re Estate of Cooke, supra,* [96 Idaho 48, 524 P.2d 176 (1974)] we held that the intent of a decedent-depositor to a joint bank account to have made a gift must be proved by clear and convincing evidence.

. . . .

In these cases in which family members have been claiming that the decedent left them certain property as a gift effective at or near death, we have required that the decedent's intention to make such a gift be demonstrated by a quantum of

proof greater than a preponderance of the evidence.

We thus conclude that the magistrate applied the correct rule of law when he required that the survivor to the joint account show by clear and convincing evidence that the deceased party to the account intended that the stock in the account pass to the survivor by right of survivorship. 'In this jurisdiction, whether a "clear and convincing" burden of proof has been met is a question for the trier of facts to decide in the first instance.' *In re Estate of Cooke, supra,* 96 Idaho at 55, 524 P.2d at 176 [(1974)]; *Vaughan v. First Federal Savings & Loan Association, supra* [85 Idaho 266, 378 P.2d 820 (1963)]. The magistrate had the primary responsibility for weighing the evidence. He alone observed the witness testify, and for that reason his finding that the plaintiff's claim was not shown by clear and convincing evidence is entitled to great weight on appeal. *In re Estate of Bogert*, 96 Idaho 522, 526, 531 P.2d 1167, 1171 (1975). *In re Estate of Cooke* involved two adult children of decedent Cooke by a former marriage who were *almost* the beneficiaries of the clear and convincing rule.

The claim of Nelson Cooke's two children by a prior marriage was "that the decedent-depositor's donative intent was not proven by clear and convincing evidence." *In re Estate of Cooke*, 96 Idaho 48, 55, 524 P.2d 176, 183 (1974). The majority opinion in *Cooke* carefully avoided giving any clue as to the nature of the evidence which sustained the trial court in deciding that, whatever it was, it was clear and convincing. This extremely important issue was avoided by the all-purpose cliche that "a review of the record in this case supports the trial court's holding that the evidence was sufficient to sustain a finding that the decedent-depositor's donative intent was proven in a clear and sufficient manner." 96 Idaho at 55, 524 P.2d at 176. None of that evidence surfaced in the opinion.

Justice Bakes, to his credit, did not join the majority in *Cooke*. Instead, while agreeing to the applicable burden of dona-

tive intent being that of clear and convincing evidence, he concluded that it had not been met:

> Bakes, Justice (concurring in part and dissenting in part).
>
> I agree generally with the analysis of the majority opinion, particularly the rule that a person claiming the right of survivorship in a joint tenancy bank account must prove by *clear and convincing evidence* the donative intent of the person who deposits his separate property in that bank account. In my opinion, the administrator did not carry that burden of proof, and the court should have held that the bank account and the real property were the separate property of Nelson Cooke, thereby giving the pretermitted children an intestate share in those items of property. Any relaxing of the requirement of clear and convincing evidence to prove a gift in joint tenancy bank account situations will only succeed in compounding the legal problems inherent in estate planning and dispositions.

96 Idaho at 59, 524 P.2d at 187 (underlining added).

Had Chief Justice Bakes found the time to do what the author of the majority's opinion would not bother to do, both initially and even after rehearing, namely point out the evidence which the majority had so readily described as clear and convincing (but without setting forth even a scintilla of information of what that evidence consisted), it was perhaps likely that the three other members of the Court who signed on to the author's opinion would have entertained second thoughts as to what they had joined.

The record, transcript, and briefs in that case are available in the office of the clerk, Mr. Lyon, in the Supreme Court Law Library, and also in the library of the College of Law, University of Idaho. With curiosity renewed because of the differing views in *Cooke* as to whether the evidence of donative intent amounted to clear and convincing evidence, it was in order to make a review of that appeal record.[3] The evidence in *Cooke* was even of less clarity, and less convincing than the evidence in *Hall*. Before proceeding to illustrate the extremely poor quality and short quantity of "clear and convincing evidence" in the *Cooke* case, it first should be mentioned that a gross error in the Court's opinion was the statement at 96 Idaho at 55, 524 P.2d at 183, that: "[T]he children's contention [that the surviving wife was a party to the action, and hence could not testify under the provisions of I.C. § 9–202(3)] must fail for two reasons: First, the testator's wife [sic, widow] is not a party to this action...."

Sad to say, a notice of appeal which was filed after proceedings concluded in district court, dated November 4, 1970, unequivocally shows otherwise:

> You and each of you will please take notice that Raymond T. Greene, Jr. Administrator of the estate and *Vera Darlene Cooke, widow of said decedent,* hereby appeal to the Supreme Court of the State of Idaho....

Notice of Appeal, Clerk's Transcript at 86 (emphasis added). That notice of appeal was signed: "Greene & Hunt, by: James E. Hunt, Of counsel for cross-appellants and respondent" (address stated). Mr. Greene had processed the probate proceeding on behalf of Vera Darlene Cooke, having been retained by her. As pointed out in the petition for a rehearing filed after the Supreme Court's decision, when a contest to Vera Darlene Cooke's claims in the probate proceeding was made by the children, a stipulation for continuance was entered and filed. Clerk's Transcript at 36.

---

**3.** This issue brought to mind the recent case of *Hall v. Hall,* 116 Idaho 483, 777 P.2d 255 (1989), wherein it was also a contention raised on appeal that a gift was not proven by clear and convincing evidence. That issue was not addressed in the Court of Appeals opinion and it was not addressed in this Court's opinion for the reason that the controversy was decided on other grounds, which need not be delved into here. The opinion in that case is readily available to the interested reader. After making a thoughtful perusal of the *Hall* record on appeal, carefully scrutinizing the evidence which was alleged to prove a gift, it was readily seen and said that the evidence adduced to prove a gift did not tend to approach a preponderance. My special concurring opinion in *Hall v. Hall* is also readily available.

It was executed by counsel representing the contesting children with Greene & Hunt, by James E. Hunt, for administrator, C.T.A. executing it as attorneys for Vera Darlene Cooke.

According to the opinion filed by Justice Bakes in *Cooke*, "... the administrator did not carry that burden of proof [*clear and convincing evidence*], and the Court should have held that the bank account and the real property were the separate property of Nelson Cooke, thereby giving the pretermitted children an intestate share...." 96 Idaho at 59, 524 P.2d at 186. The majority opinion did show that Nelson H. Cooke died in California on February 20, 1966, and it did show that Cooke married Vera Darlene on March 14, 1964. The majority opinion did show that the children relied on *In re Chase*, 82 Idaho 1, 348 P.2d 473 (1960). It also showed that both spouses deposited their separate funds and then their community funds in joint bank accounts. It did show awareness of the rule of *Chase:*

(4) Where one party deposits money in a joint account and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, except irrevocable delivery, by clear and convincing evidence.

96 Idaho at 55, 524 P.2d at 183 (citation omitted). It also showed that the bulk of all deposits was the separate property of Nelson T. Cooke from a sale of his California business enterprise.

What the majority opinion did not discuss was a district court finding that "both the testator and his wife deposited their separate funds and their community income into their joint bank accounts *with the intent of conferring a gift upon the other ... that upon deposit in these accounts the funds deposited became property owned in joint tenancy with right of survivorship.*" *Cooke*, 96 Idaho at 54, 524 P.2d at 181 (emphasis added). The majority's opinion made no mention of the district court's observance that Vera Darlene

Cooke, in initiating the probate proceeding, signed the petition to the effect that Cooke's estate at his death consisted only of real estate in Bonner County valued at $25,000. The majority opinion did not disclose that after Mr. Greene was appointed administrator of the Cooke estate, he prepared and filed an inventory and appraisal which showed the real property as "community property of decedent and Vera Darlene."[4] Clerk's Transcript at 69.

The district court also made this monumental finding:

Mr. Cooke made it very clear in his conversations with Mrs. Cooke and in his conversations with one Lee Carter that he wanted everything fixed so that if he died, she was to get everything.

Clerk's Transcript at 72–73. What the majority opinion ignored totally was *Claunch v. Whyte*, 73 Idaho 243, 249 P.2d 915 (1952), a unanimous opinion by the Court (comprised of Justice Taylor (author), and Justices Givens, Porter, Keeton, and Thomas) which in speaking of oral testimony to prove a gift, declared that: "[s]ufficient here that it is regarded as the *weakest* kind of evidence," citing to, *inter alia, Herbert v. Lankershim*, 9 Cal.2d 409, 71 P.2d 220 (1937), "[o]ral evidence, of which there is no satisfactory independent corroboration, is the weakest kind of evidence known to the law."

The *Cooke* majority opinion concluded with the overworked cliche, "[a] review of the record in this case supports the trial court's holding that the evidence was sufficient to sustain a finding that the decedent-depositor's donative intent was proven in a clear and convincing manner." 96 Idaho at 55, 524 P.2d at 183. It is no wonder that Justice Bakes was brought to worry that, "[a]ny *relaxing of the requirement of clear and convincing evidence* to prove a gift in joint tenancy bank account situations will only succeed in compounding the legal problems inherent in estate planning and dispositions." 96 Idaho at 59, 524 P.2d at 186 (emphasis added). In all probability there never was a case where the evidence

---

4. The district court ruled that Vera Darlene Cooke should not be bound by the statements of Mr. Greene, notwithstanding that he was her attorney, and, also at her request was appointed administrator of the Cooke estate.

required by *Chase*, 82 Idaho 1, 348 P.2d 473, was as deficient as it was in *Cooke*.

It would be one thing for an appellate court to "review" the record and then declare the evidence insufficient, but quite another thing to declare that the evidence sustains the trial court's decision and findings *without giving an iota of indication of the nature of the evidence*. Actually, in both instances the litigants are entitled to have the evidence disclosed and to be directed to the insufficiencies (if declared insufficient) or to what the Court determines the evidence to be and to some extent why it is considered sufficiently clear and convincing.

The Idaho Supreme Court performed that function in *Claunch v. Whyte*, and also in the *Chase* case, but it failed magnificently in the *Cooke* case, it failed again in this case, and so far it appears to be failing in the recent case of *South Fork Coalition v. County Commissioners of Bonneville County*, 117 Idaho 857, 792 P.2d 882 (1990).[5]

---

**5.** In *South Fork* the quantum of evidence was not an issue, and was implicitly seemed to have considered under the preponderance standard. The case as it progressed from an initial decision by the Board of County Commissioners became thereafter mis-styled as *South Fork Coalition v. Board*. This resulted from use of that styling when South Fork Coalition filed a petition in district court requesting that the district court assume jurisdiction and conduct a judicial review of the Board's final decision under provisions of the Administrative Procedures Act. On completion of the district court review and order reversing, the case was more correctly restyled in proceedings in this Court as *J.R. Hays & Sons, Inc. v. South Fork Coalition*, 112 Idaho 89, 730 P.2d 1009 (1986). The Board of County Commissioners was not involved as a party on the appeal. The adversarial parties at all times were South Fork Coalition against Hays. Strangely, in *South Fork II*, Hays did not appear, although it was the only appellant in *South Fork I*. Rather it was in *South Fork II*, the Board, the initial decision maker, through its counsel appeared and argued against South Fork Coalition.