Mary Louise **BERG**, Appellant,

v.

**D.D.M., Respondent.**

No. C4–99–905.

Court of Appeals of Minnesota.

Dec. 21, 1999.

Patricia A. O'Gorman, Patricia A. O'Gorman, P.A., Cottage Grove, for appellant.

Larry B. Leventhal, Larry Leventhal & Associates, Minneapolis; and Larry Meuwissen, Meuwissen & Kieffer, P.A., Minnetonka, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Mary Berg appeals from the district court's order denying her motion to retroactively establish a child-support agreement and to require future support payments in addition to social-security income received by the child. We affirm the district court's order denying retroactive support and finding respondent D.D.M.'s joint-investment account was not a multiple-party account from which child support may be paid. On the issue of future support, we reverse the district court's denial of future support and remand for the district court to set support in an equitable amount.

## FACTS

Appellant Mary Berg is the mother of a child, E.L.M.B., born September 25, 1984. Appellant and respondent D.D.M. executed a declaration of parentage on April 20, 1984, before the birth of the child. In July 1986, appellant and respondent stipulated to a child-support agreement.

The stipulation acknowledged that respondent was the father of the child and agreed to provide support for the child from her birth until her majority or age 20 if still in high school or until she is emancipated. The stipulation further provided that appellant could file the stipulation with the court if the respondent ceased to support the child or died.

The stipulation also provided support "shall be a minimum of $500 per month" and acknowledged that this constituted a downward deviation from the support guidelines. Without a written modification or court order, appellant and respondent agreed to increase the amount to $600 per month and appellant acknowledged that those payments continued until respondent

was hospitalized in May 1997. Appellant also acknowledged respondent paid all of the child's dental expenses and contributed to the cost of vacations.

In August 1997, the child began receiving social-security disability benefits of $957 per month due to respondent's disability. Upon respondent's death in January 1998, these benefits continued as social-security survivor benefits.

On December 5, 1997, appellant commenced an action to declare respondent to be the father of appellant's child. Subsequently, at the request of respondent's spouse, blood tests were done and respondent was identified as the child's father. On August 25, 1998, the district court referee found respondent to be the father of appellant's child.

Prior to the determination of paternity, respondent died intestate on January 28, 1998. His estate consisted primarily of non-probate assets in the form of a homestead, a condominium, and a Dean Witter Reynolds brokerage account valued at $242,067. This account was jointly owned by respondent and his surviving spouse.

Appellant served a written statement of claim on the personal representative of respondent's estate on September 3, 1998, and on November 23, 1998, filed a petition with the court. In her petition, appellant moved the court to (1) establish support pursuant to Minn.Stat. § 257.66 (1998), effective as of August 18, 1995, two years before the date she attempted to serve respondent with the paternity action; (2) establish future support pursuant to Minn. Stat. § 518.64, subd. 4 (1998), and (3) grant an award of attorney fees and costs from respondent's estate. Appellant also claimed future support through June 2003, the anticipated date of the child's graduation from high school. Appellant submitted evidence of respondent's income in 1997 and it is undisputed that application of the child-support guidelines to respondent's income for the two years before the paternity action would result in a significantly higher level of support than respondent was paying under the parties' stipulation.

The district court held appellant had failed to show a legal or factual basis for her claim against the estate of the decedent and issued an order denying all of her claims. This appeal followed.

## ISSUES

1. Is a joint-investment account with a stock brokerage firm a multiple-party account within the meaning of Minn. Stat. § 524.6–207 (1998) and available to pay support to the child to the extent of the decedent's beneficial interest in the account?

2. Did the district court abuse its discretion in declining to modify support retroactively?

3. Did the district court abuse its discretion in declining to require future child support payments in addition to social-security disability benefits?

## ANALYSIS

**1. Joint-investment account**

■ Appellant argues respondent's investment account with the Dean Witter stock brokerage firm is a multiple-party account from which support may be paid to the extent of respondent's beneficial interest in the account. In support of her contention, appellant cites Minn.Stat. § 524.6–207 (1998), a provision of the Minnesota Multiparty Accounts Act, Minn. Stat. §§ 524.6–201–.6–214 (1998). Section 207 provides in relevant part:

No multiple-party account will be effective against an estate of a deceased party to transfer to a survivor sums needed to pay debts, taxes, and expenses of administration, including statutory allowances to the surviving spouse, minor children, and dependent children * * *, if other assets of the estate are insufficient, to the extent the deceased party is the source of the funds or beneficial owner. A surviving party or P.O.D.

payee who receives payment from a multiple-party account after the death of a deceased party shall be liable to account to the deceased party's personal representative * * * for amounts the decedent owned beneficially immediately before death to the extent necessary to discharge any such claims and charges remaining unpaid after the application of the assets of the decedent's estate.

Minn.Stat. § 524.6–207. Thus, appellant argues that any surviving joint tenant is liable to the estate of the decedent for respondent's child-support liability to the extent of respondent's beneficial interest in the account.

Respondent counters that the Dean Witter account is not a multiple-party account within the meaning of Minn.Stat. § 524.6–207 because it is not an "account" as defined by Minn.Stat. § 524.6–201, subd. 2.

Whether a joint-investment stock account is a multiple-party account subject to Minn.Stat. § 524.6–207 has not previously been addressed by the Minnesota appellate courts. The Idaho Supreme Court has, however, considered this issue on two occasions. We look to these cases for guidance as Idaho and Minnesota adopted nearly identical provisions from the Uniform Probate Code regarding multiple-party accounts. *Compare* Idaho Code §§ 15–6–101, –107 (1979), *with* Minn.Stat. §§ 524.6–201, –207.

In *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975), the Idaho Supreme Court considered whether securities held by a husband and wife in a stock account with a brokerage firm involved an "account" within the meaning of the Uniform Probate Code. *Id.* at 1170. The court held there was no "account" as defined by the UPC and that a stock brokerage firm handling a brokerage account for a person investing in stocks could not be "fairly construed to be a 'financial institution' and the investor a 'depositor' of funds." *Id.* at

1170–71. Fifteen years later, in *In re Estate of Ashe*, 117 Idaho 266, 787 P.2d 252 (1990), the Idaho Supreme Court confirmed its opinion in *Bogert* and concluded that a stock brokerage firm that maintained a cash-management account was not a "financial institution" within the meaning of the Uniform Probate Code.[1] *Id.* at 254.

Applying the reasoning in *Bogert* and *Ashe* to the facts of the instant case, we conclude that respondent's investment account with the Dean Witter stock brokerage firm is not a multiple-party account under Minn.Stat. § 524.6–201, subd. 5. This section defines a multiple-party account as "a joint account or a P.O.D. account" and defines an "account" as

a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement.

Minn.Stat. § 524.6–201, subd. 2. In order for there to be an account, there must be a "deposit of funds between a depositor and a financial institution." *Id.* As the *Bogert* court stated, "investments in stocks through the means of a stockbroker * * * are not the 'deposit of funds' in a 'financial institution' contemplated in the definition of 'account.' " *Bogert*, 531 P.2d at 1171; *cf. Estate of Reed*, 681 A.2d 460, 462 (Me. 1996) (holding decedent's individual retirement account was not an "account" within the meaning of the probate code and thus, was not a "multiple party account" that could be brought into the estate and accessed by his creditors). Accordingly, respondent's investment of funds with Dean Witter is not a multiple-party account available for payment of child support.

**2. Retroactive child support**

▇ Appellant next argues the district court abused its discretion in denying her claim for support for the two years before the commencement of the action. We dis-

---

1. We note that the Idaho Supreme Court recognized the evolving nature of financial institutions and did not categorically preclude all

future litigants from demonstrating that stock brokerage firms may be found to be financial institutions.

agree and conclude that under the circumstances of this case the district court properly exercised its discretion.

Appellant initially brought an action to establish paternity and child support under the Parentage Act, Minn.Stat. §§ 257.51–.74 (1998). Under the Parentage Act, any existing agreement between a presumed father and the mother "other than an agreement approved by the court" does not bar an action to establish paternity and support. Minn.Stat. § 257.57, subd. 4; *see also* Minn.Stat. § 257.72, subd. 1 (stating "a signed promise to furnish support for a child, * * * does not require consideration and is enforceable * * * subject to section 257.57, subdivision 4"). The statute also requires the district court to establish a child-support order, *see* Minn.Stat. § 257.66, subd. 3 (stating "[t]he judgment or order shall contain provisions concerning the duty of support"), and provides guidance for establishing past support. Minn.Stat. § 257. 66, subd. 4. Subdivision four of the statute states in part:

> Support judgments or orders ordinarily shall be for periodic payments which may vary in amount. In the best interest of the child, a lump sum payment may be ordered in lieu of periodic payments of support. The·court shall limit the parent's liability for past support of the child to the proportion of the expenses that the court deems just, which were incurred in the two years immediately preceding the commencement of the action.

*Id.*

■ Moreover, in determining what amount of past support is just, a court must consider the earnings, needs, and resources of the obligor, obligee, and child. *McNeal v. Swain,* 477 N.W.2d 531, 534 (Minn.App.1991). The current and past income of the obligor must also be considered, and the court must make particularized findings when formulating a past support award. *Id.* But, when determining a parent's liability for past support of a child, Minn.Stat. § 257.66, subd. 4, grants the district court discretion to limit the parent's liability to what it "deems just" in the circumstances and provides three specific examples of when the court may deviate downward from the guidelines. Minn. Stat. § 257.66, subd. 4. Further, when a parent who is obligated to provide support dies, the district court's discretion to determine the amount of support is broadened. In this instance, the district court may modify, revoke, or commute to a lump sum the amount of support "to the extent just and appropriate in the circumstances." Minn.Stat. § 518.64, subd. 4 (1998).

■ In the instant case, the district court did not reach the issue of support at the parentage hearing; instead, it reserved it for a later hearing. At the hearing on support, the district court received evidence of the respondent's prior income and past contributions to child support, including appellant's admission that respondent made regular contributions for vacations and paid the child's dental bills, in addition to paying the support provided for in the parties' stipulation. The district court also considered the availability of assets in respondent's estate for paying child support. Moreover, the district court implicitly considered the needs of the child when it found the parties had consented to and relied on the previous stipulation until respondent's death. In light of the circumstances in this case and the statutory discretion granted to the district court, we cannot conclude it abused its discretion in limiting respondent's past support payments to those stipulated to by the parties.[2]

2. Because the parties' stipulation does not directly conflict with statutory requirements, the Minnesota Supreme Court's recent decision in *Frauenshuh* does not require a different result. *See Frauenshuh v. Giese,* 599 N.W.2d 153, 158 (Minn.1999) (holding that the statutory endangerment standard applies to parties seeking a modification of an award of sole physical custody, even when the parties have stipulated to a different standard in their dissolution decree). Here, although the district court considered the parties' stipu-

### 3. Future support

■ Lastly, appellant argues the district court abused its discretion in concluding the child was not entitled to future child support because court-ordered child support was not in place prior to respondent's death and the child's receipt of social-security survivor benefits eliminated respondent's estate's liability for any future support payments.

#### a. Lack of court-ordered support obligation

Several sections of the Parentage Act recognize that parentage proceedings may involve a decedent or his estate. *See, e.g.,* Minn.Stat. §§ 257.57, subd. 2 ("the child, the mother, * * * or the parent of alleged father if the alleged father has died, may bring an action"), 257.59, subd. 3 ("the action may be brought in the county in which the child or the defendant resides * * * or, if the defendant is deceased, in which proceedings for probate of the defendant's estate have been commenced").

Similarly, Minn.Stat. § 518.64, subd. 4, makes it clear that the duty to provide child support does not terminate with the obligor's death. The statute provides:

> Unless otherwise agreed in writing or expressly provided in the order, provisions for the support of a child are not terminated by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment, to the extent just and appropriate in the circumstances.

*Id.*

■ The district court's conclusion that Minn.Stat. § 518.64, subd. 4, refers to existing court orders and was not intended to authorize the court to issue support orders against the estate of a deceased overlooks the fact that Minn.Stat. § 257.66, subd. 3, specifically requires the court to establish a support order and refers to chapter 518 for implementation of the order. Thus, the absence of a child-support order at the time of respondent's death does not preclude the court from ordering future support or a lump-sum payment, if appropriate, in light of the particular circumstances of the case. We remand to the district court to make findings regarding the circumstances in the instant case.

#### b. Social-security survivor benefits

The precise issue of whether a child's receipt of social-security survivor's benefits should be credited against the duty of the obligor's estate to continue making support payments after the death of the obligor is an issue of first impression in Minnesota.

In light of this court's decision in *Holmberg v. Holmberg,* 578 N.W.2d 817 (Minn. App.1998), *aff'd,* 588 N.W.2d 720 (Minn. 1999), and our review of the decisions from other jurisdictions, we conclude a child's receipt of social-security survivor's benefits should be credited against any duty imposed on the obligor's estate. *See* Michael A. DiSabatino, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child,* 34 A.L.R.5th 447, 507–13 (1995).

In *Holmberg,* a child-support obligor argued that social-security disability payments paid on behalf of a child for whom he had a duty of support should be credited against his support obligation. 578 N.W.2d at 826. We agreed and held that the obligor should be given credit against his prospective support obligation and arrearages for benefits paid on behalf of the child. *Id.* at 827. In reaching this conclusion, we considered the purpose of disability payments to the child and found they

lated agreement, its decision is also supported by Minn.Stat. § 257.66, subd. 4, which specifically grants the district court discretion to limit a parent's obligation for past support, and Minn.Stat. § 518.64, subd. 4, which allows the court discretion to consider what amount of support is just and appropriate upon the death of a child-support obligor.

were identical to the source and purpose of child support. *Id.*

As in *Holmberg,* we conclude the purpose of social-security survivor's benefits is identical to that of child support. Survivor's benefits are to be used for the beneficiary's current maintenance, which includes the "costs of food, shelter, clothing, medical care, and personal comfort items." *In re Guardianship of Nelson,* 547 N.W.2d 105, 107 (Minn.App.1996) (quoting 20 C.F.R. §§ 404.2040(c) (1994)). The benefits are designed to "replace a deceased parent's income" that would otherwise be available for the child's current maintenance costs. *Id.* at 108.

Although the equity consideration of requiring an obligor, whose sole source of income is from disability payments, to pay support from those benefits, is not present in this case as it was in *Holmberg,* the estate's ability to pay support presents a similar issue. *Holmberg,* 578 N.W.2d at 826–27. In both instances, disability and death, neither obligor is earning income that would otherwise be available for current and future child support. Therefore, we conclude the district court did not abuse its discretion in crediting the respondent's estate for social-security death benefits paid to the child, but did abuse its discretion to the extent it determined social-security death benefits barred an award of future support payments. *See Gorski v. Welch,* 993 S.W.2d 298, 304 (Tex. App.1999) (holding father's estate was entitled to a credit against its obligation to continue to make child-support payments for the amount of social-security death benefits paid to out-of-wedlock child).

## DECISION

The district court correctly determined respondent's joint-investment account with the Dean Witter stock brokerage firm was not a multiple-party account from which child-support payments may be made to the extent of respondent's beneficial interest in the account. Further, it was not an abuse of the district court's discretion to deny retroactive child support. The district court erred, however, in concluding that the child was not entitled to future support because a child-support order was not in place at the time of respondent's death and in holding that the child's receipt of social-security survivor benefits eliminated the estate's liability for any future support payments. We, therefore, reverse in part and remand to the district court to determine the liability of respondent's estate for future child-support payments after crediting the estate for the social-security death benefits paid to the child.

**Affirmed in part, reversed in part, and remanded.**