711 P.2d 1320

**E.C. DeBACA, et ux.,
Cross-Claimant, Appellant,**

v.

**Earl McAFFEE and Ada McAffee, husband and wife, Cross-Defendants, Respondents.**

No. 15134.

Court of Appeals of Idaho.

Nov. 1, 1985.

Steven E. Carr (Fuller & Carr), Idaho Falls, for cross-claimant, appellant.

Rich G. Andrus (Rigby, Thatcher, Andrus, Barton and Walters), Rexburg, for cross-defendants, respondents.

BURNETT, Judge.

This appeal arises from the sale of a cattle ranch near Mackay, Idaho. The controversy concerns the scope of grazing rights, and rights in a cattle grazing association, transferred in the sale. The dispositive questions are whether the contract and deed are ambiguous and, if so, whether substantial evidence supports the district court's determination of the parties' underlying intent. For reasons explained below, we answer both questions in the affirmative and we uphold the district court's judgment.

The ranch was sold by Earl and Ada McAffee to E.C. DeBaca. While they owned the ranch, the sellers had grazing rights on federal lands administered by the Forest Service and the Bureau of Land Management (BLM). In addition, the sellers were members of Copper Basin Cattle & Livestock Association. This membership conferred two benefits. First, the sellers received grazing rights on land owned by the Association and upon federal lands governed by "exchange use agreements" between the Association and the BLM. Second, the sellers had a pro rata interest in land owned by the Association itself.

It is undisputed that when they sold the ranch, the sellers transferred their individual grazing rights on the federal lands. However, a dispute later emerged as to whether—and to what extent—they also had transferred their rights in the Association. This dispute was sharpened by a resolution, passed by a majority of the Association's members, providing for a partition of the Association's land.

After the ranch sale contract and deed were executed, the sellers became concerned about the status of their rights in the Association. They consulted counsel who, in turn, contacted a lawyer purportedly representing the buyer. The two attorneys agreed that the sellers would issue a "correction deed," making it clear that no rights were transferred except individual grazing rights on the federal lands. The second deed was prepared, signed and recorded.

The buyer voiced no immediate objection to the "correction deed." He remained in possession of the ranch and made payments as provided in the contract. However, in the meantime, litigation erupted among members of the Association. Some of them did not like the proposed allocation formula in the partition resolution. The buyer of the ranch was named as one of the parties in the lawsuit. He filed a cross-claim against the sellers, asserting that they had transferred all Association rights to him. However, the court ruled that the sellers' interest in the Association's land,

and their grazing rights on "exchange of use" lands, had not been transferred. The court advanced several alternative reasons for its ruling. The judge held that the sale had not been fully consummated until the "correction deed" was issued. He also held that the buyer had accepted or ratified the second deed. Finally, the judge determined that the contract and original deed were ambiguous and that the parties had not intended a transfer of all Association rights.

The parties have devoted much effort to briefing and arguing the first two rationales for the trial court's decision. They have debated whether the transaction could have been deemed incomplete when a contract had been signed and the original deed had been issued; whether the buyer's purported attorney had authority to agree upon a "correction deed"; and whether the buyer, in any event, ratified the "correction deed" by silence, coupled with retention of other benefits provided by the transaction. However, we find it unnecessary to reach these intriguing questions. Our analysis focuses more modestly upon the district court's declaration that the contract and original deed were ambiguous and upon the court's determination of the underlying intent.

The contract and original deed contained identical descriptions of rights transferred upon sale of the ranch:

> All grazing permits which the Owner holds as an individual permittee and as a member of the Copper Basin Grazing Association, *with the United States Department of the Interior, Bureau of Land Management, with the United States Department of Agriculture, Forest Service, and with any other state or federal agency which permits grazing of livestock on specified land . . . .* [Emphasis added.]

This language clearly embraces the sellers' individual grazing rights on Forest Service and BLM lands. But what does it say about grazing rights or other rights within the Association? Here, we think the meaning is obscure. The words "[a]ll grazing

permits which the Owner holds ... as a member of the Copper Basin Grazing Association" might be interpreted to embrace a full panoply of Association rights. However, these words are followed by a series of modifying phrases, emphasized in the foregoing quotation. These phrases reasonably could be interpreted to mean that the rights transferred upon sale of the ranch are limited to "grazing permits" issued by the BLM, the Forest Service, or "any other state or federal agency...." This interpretation would exclude grazing rights on the Association's land or a right to participate in a partition of the land. It would also cast doubt upon any transfer of grazing rights established by "exchange of use" agreements between the Association and the BLM.

 Because the quoted language lends itself to differing interpretations, we agree with the district judge that the contract and original deed were ambiguous. Ordinarily, the interpretation of written instruments is a question of law. *E.g., Barr Development, Inc. v. Utah Mortgage Loan Corp.,* 106 Idaho 46, 675 P.2d 25 (1983). However, where—as here—the terms of the instruments are ambiguous, interpretation becomes a question of fact. The district court was entitled to consider extrinsic evidence in arriving at the true intent of the parties. *E.g., Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App.1982).

The district judge heard conflicting testimony from the buyer and the sellers regarding their pre-contract negotiations. According to Mr. McAffee's testimony, the buyer was told repeatedly that the sellers would transfer only the rights evidenced by the Forest Service and BLM permits. The buyer denied being so informed. The court elected to believe Mr. McAffee. We will not disturb the judge's choice. The credibility of witnesses who testify in open court is for the trier of fact to determine. *E.g., Lawyers Title Co. of Idaho v. Jacobs,* 102 Idaho 804, 641 P.2d 350 (Ct.App.1982).

The judge acknowledged that Association rights historically had been transferred upon the sale of real property. But he found that such rights ordinarily were transferred because the property owner no longer had use for them. In this case the record disclosed that the sellers owned a second ranch. They could derive continuing benefits from Association rights, and it was logical for the sellers to retain them.

We conclude that substantial evidence supports the judge's finding that the underlying intent of the contract and original deed was to leave certain Association rights with the sellers. Findings supported by substantial evidence cannot be deemed clearly erroneous and, therefore, will not be overturned on appeal. I.R.C.P. 52(a); *Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). The contract and original deed having been so interpreted, the validity of the second deed—which similarly restricted the rights transferred— need not be addressed.

The judgment of the district court is affirmed. Costs to respondents, McAffee. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.