793 P.2d 195

**Lillie B. PARKER, Plaintiff–Appellant,**

v.

**Marilyn KOKOT and Jane Tofari, Personal Representatives of the Estate of John Richard Parker, Deceased, and Marilyn Kokot and Jane Tofari, as Individuals, Defendants–Respondents.**

No. 17368.

Supreme Court of Idaho.

May 23, 1990.

Evans, Craven & Lackie, P.S., Coeur d'Alene, for plaintiff-appellant. Jarold P. Cartwright argued.

Harvey Richman, Coeur d'Alene, for defendants-respondents.

BOYLE, Justice.

Plaintiff-appellant, the widow of decedent John Parker, filed suit for damages alleging that defendants-respondents, personal representatives of decedent's estate and decedent's daughters, failed to pay her certain sums. Defendants-respondents moved for summary judgment, and their motion was granted. We reverse and remand for further proceedings.

This appeal involves an action by the widow against the personal representatives of the estate for damages for failing to distribute the proceeds of a brokerage account to plaintiff pursuant to a trust provision in the will of the decedent. This action raised the question of whether the brokerage account was part of the estate or whether it was owned by the daughters of the decedent who were parties to the brokerage account. The trial court granted summary judgment for the defendants, thereby ruling that the estate did not have an interest in the account. This ruling was made upon the basis that the parties to the account, including the decedent, were "tenants in common" owning equal undivided interests and that the interest of the decedent had been exhausted for estate expenses. The rights of the parties to the funds in the brokerage account are at issue in this appeal.

On November 1, 1980, decedent opened an individual account with Shearson American Express (Shearson) in Woodland Hills, California. At that time, decedent was single. Twenty-seven days later decedent closed the account and opened a new account with Shearson on December 1, 1980. The new Shearson Customer's Agreement was in decedent's name and his two daughters, Jane Tofari and Marilyn Kokot, who were designated as "joint parties." At the same time they executed an authorization letter which permitted the decedent to withdraw funds without his daughters' signatures. The letter reads:

SHEARSON LOEB RHOADES, INC.
6222 Topanga Canyon Blvd.
Woodland Hills, CA 91367
RE: 549–06264–12–017
John R. Parker
Marilyn Kokot
Jane Tofari Tenants In Common
To Whom It May Concern:
This is to authorize you to issue checks out of our account made payable to the single name of John R. Parker on his verbal request.
Thank you for your cooperation.
Sincerely,
John R. Parker
Marilyn Kokot
Jane Tofari

Shearson sent monthly account earning statements addressed to "John R. Parker and Marilyn Kokot and Jane Tofari[,] Ten in Com." [1]

In October, 1982, decedent transferred the account to the Coeur d'Alene, Idaho office of Shearson [Foster & Marshall]. Don Scharenberg, a broker in the Coeur d'Alene office of Shearson, handled the transfer and administered the account from October, 1982, until decedent's death on October 9, 1984. Mr. Scharenberg testified in his deposition that he contacted decedent to confirm that he actually wanted his account established as a tenant in common account as opposed to a joint tenant account. Scharenberg testified that decedent verified he wanted the account set up as a tenant in common account.

> The account was—we opened the account, or basically transferred the account here from Woodland Hills as a Tenants in Common account.
>
> . . . .
>
> Most of my clients when—when ownership is other than single use a—what we call a Joint Tenants with Rights of Survivorship. And when we transferred the account up here, I believe we first approached—or I first approached MR. PARKER regarding the registration of the account because I wanted to verify that he indeed want[ed] a Tenants in Common account as opposed to a Joint Tenants account.
>
> The basic discussion was the verification that he wanted the account owned that way or set up that way.

Following this conversation, decedent apparently chose not to modify the account because it remained unchanged until his death. However, there is other evidence in the record that raises genuine issues of material fact which preclude granting summary judgment.

On January 4, 1983, decedent married Lillie B. Parker (Parker), and on March 28, 1984, decedent executed a will of which the portion relevant to this action reads:

### IV.

I give to my beloved wife, LILLIE, during her lifetime, the interest income from all my investments, in particular, all funds invested with Foster & Marshall [Shearson], Coeur d'Alene, Idaho. (This bequest is subject to Paragraph VI below.)

Further, I give my wife the right to use my personal property during her lifetime, or until her remarriage, or until she moves from our residence at 702 Walnut.

I give all the rest, residue and remainder of my estate to my children in equal shares, share and share alike, to be distributed after LILLIE'S death. If either child has predeceased me, I give her share to her children in equal shares.

### V.

I nominate and appoint either or both of my daughters as Personal Representative of this my Last Will and Testament, to act without bond.

### VI.

I direct my Personal Representative to establish a trust and place my investments, particularly all sums in my account at Foster & Marshall (Shearson), Coeur d'Alene, Idaho, in the trust, for the benefit of my wife, LILLIE, for the duration of her life.

. . . .

I direct the Trustee to distribute all interest income to my wife LILLIE. In the event that the interest is insufficient to pay LILLIE'S reasonable expenses and support, I hereby direct and empower the Trustee to invade and distribute the trust principal to LILLIE for her support.

Upon LILLIE'S death, this trust shall be terminated and the balance of the princi-

---

1. The Shearson Customer Agreement executed by the decedent and his daughters does not expressly state whether the account was held by them as tenants in common or joint tenants. The monthly statements however, refer to the parties as tenants in common. The written authorization letter signed by decedent and his daughters authorizing Shearson to distribute funds out of the account upon decedent's request also refers to them as tenants in common.

pal shall be distributed to my daughters in equal shares.

. . . .

When decedent died on October 9, 1984, there was approximately $93,381.00 in the Shearson account in Coeur d'Alene. On advice of counsel for the estate, $20,000.00 was paid to settle litigation in which decedent was involved in California. From October 10, 1984, until January 14, 1986 the daughters, as personal representatives of the estate, paid approximately $11,000.00 to Parker for her support. Thereafter, they refused to pay anything further to Parker and did not establish a trust fund with the account assets as directed in decedent's will. Instead, the daughters paid the balance of the account to themselves individually.

Parker filed suit against the daughters, individually and as personal representatives, seeking damages in the amount of $98,728.00, representing the value of the account plus interest. The daughters moved for summary judgment, arguing that the account was held as a tenancy in common with themselves and the decedent being the tenants. The daughters argued that decedent's estate has access only to a one-third share of the value of the account, which share has nearly been exhausted by the $20,000.00 litigation settlement and the $11,000.00 paid to Parker. Their motion for summary judgment was granted, and Parker appeals.

The issue presented on appeal is whether the district court erred in granting the daughters' motion for summary judgment in light of several issues of fact. We hold under the particular circumstances of this case that the district court erred in granting summary judgment.

■ Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The law is well established in Idaho that on a motion for summary judgment, the court must determine whether the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Boise Car & Truck v. Waco, Inc.,* 108 Idaho 780, 702 P.2d 818 (1985); I.R.C.P. 56(c). The party opposing the motion is to be given the benefit of all favorable facts and inferences which might be reasonably drawn from the evidence. *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986).

■ Further, the standards for summary judgment require the district court to liberally construe the facts in favor of the non-moving party and to draw all reasonable inferences from the record in favor of the non-moving party. *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Meridian Bowling Lanes, Inc. v. Meridian Athletic Assn., Inc.,* 105 Idaho 509, 670 P.2d 1294 (1983); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). Further, all doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions. *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Ashby v. Hubbard,* 100 Idaho 67, 593 P.2d 402 (1979).

■ If the summary judgment proceeding involves the interpretation of unambiguous legal documents, the interpretation of those documents is a question of law for the trial court. If the documents are ambiguous their interpretation is a question of fact for the trier of fact. *DeLancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986); *see also DeBaca v. McAffee,* 109 Idaho 800, 711 P.2d 1320 (Ct.App.1985).

■ The general rule in summary judgment proceedings that a motion must be denied if the evidence is such that conflicting inferences can be drawn and reasonable persons might reach different conclusions is particularly appropriate where the case is to be tried to a jury. *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982); *Lundy v. Hazen,* 90 Idaho 323, 411 P.2d 768 (1966). In *Riverside,* we observed:

This Court has held in the past that even though there are no genuine issues of material facts between the parties "[a] motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions." *Lundy v. Hazen*, 90 Idaho 323, 326, 411 P.2d 768, 770 (1966). Such a rule is proper where the matter is to be tried to a jury, because even though evidentiary facts may be undisputed, those evidentiary facts may yield conflicting inferences as to what the ultimate facts of a case are. If such conflicting inferences are possible, then summary judgment would deprive the parties of the right to have the jury make the decision in the matter. Nevertheless, where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences. (Citations omitted.)

103 Idaho at 519, 650 P.2d at 661.

■ This principle of law is important to address because in the present case counsel for both parties were under an incorrect impression that the consolidated cases were scheduled to be tried by the court sitting without a jury. By stipulation of counsel the estate proceeding and the civil action for damages had been consolidated for trial. At the summary judgment hearing both counsel unequivocally, yet incorrectly, represented to the district judge that the case was scheduled for a court trial. Had the case actually been scheduled as a court trial, the district judge could have drawn all reasonable inferences from any undisputed facts that existed because the court alone would be responsible for resolving the conflict between those inferences. *Riverside Dev. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). However, disputed facts exist in the instant case, and it is not a court trial because a demand for jury trial had been filed. Although the estate proceeding was obviously a court trial, the answer filed in the damage action by the daughters contained a written demand for jury trial.[2] Accordingly, for purposes of summary judgment and our review, the consolidated cases must be considered as one scheduled for jury trial requiring a factual determination of disputed facts by the trier of fact.

■ The trial court concluded that the evidence in the record established as a matter of law that the account was owned by the decedent and his two daughters as tenants in common. This finding is not sufficient to grant summary judgment for the daughters as the stated tenants in common. The district court recognized that the documents establishing the account were not clear in expressing the manner in which the account was held between the daughters and decedent. In the order granting the daughters' motion for summary judgment, the district judge stated:

> Quite frankly, the first half of the Plaintiff's contention is correct: the Shearson Customer's Agreement executed by the two Defendants and the Decedent does not, in itself, state how the parties held the account—i.e., as tenants in common, joint tenants, etc. However, the court is of the opinion that this does not preclude the granting of summary judgment on this issue.

The trial court erroneously concluded that the evidence in the record established as a matter of law that the account was owned by decedent and his two daughters as tenants in common. There were, however, other factual issues raised which preclude the granting of summary judgment. At the time John R. Parker set up the account and placed his two daughters' names on the account, he specifically retained, and his two daughters acknowledged, his right to withdraw some or all of the account "on his verbal request" without the knowledge, authorization or approval of either of the two daughters.

---

**2.** In addition to the answer containing a written demand for jury trial, the status conference minutes and the notice of trial clearly reflect the consolidated cases were scheduled for jury trial.

That unlimited authority retained by John R. Parker over all the funds, which admittedly were entirely his separate property prior to the establishment of the account, raises a factual question of whether the establishment of the account with his two daughters was intended by him to effect an immediate gift of two-thirds of the account to them, or whether it was merely set up for his business or personal convenience.

■ This Court has previously held that merely placing the names of other persons on a joint account does not preclude a showing that the account was merely set up for business or personal convenience reasons, and that the addition of the names of other depositors on the account does not change the nature of the funds contained in the account. As stated in *In re Estate of Chase*, 82 Idaho 1, 348 P.2d 473 (1960):

> [T]he intention of the owner of money in depositing it in a joint account is a question of fact where there is evidence as to the intention.... the court will look to the intention of the parties relating to the creation of the account; if the account is intended purely for the convenience or business necessity of the putative donor, then no right of survivorship attains.

82 Idaho at 8, 348 P.2d at 477. *Accord Idaho First Nat'l Bank v. First Nat'l Bank of Caldwell*, 81 Idaho 285, 340 P.2d 1094 (1959), wherein we held that in determining the effect of a joint bank account agreement, the determinative consideration is the intent of the depositor, and this is a question for the trier of facts.

■ The intention of the parties in establishing an account is a key factor and consideration in determining whether it is held in joint tenancy with right of survivorship. In *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1974), we held:

> Whether a bank account is held in joint tenancy with right of survivorship depends on the intention of the parties, determined in the light of all the circumstances; notwithstanding form, a joint tenancy is not created where the account was made joint purely for convenience

and without the intent to create any property interests.

96 Idaho at 55, 524 P.2d at 183 (1974).

■ We have held that where the entire proceeds in the joint account were the property of the deceased, the other individuals named as depositors, in order to claim the account, must prove by clear and convincing evidence that at the time the account was established the depositor/owner intended to make a present and irrevocable gift of a proportionate share of the account. *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1974). Although the cases cited in this opinion deal with "joint tenancy" accounts, not "tenancy in common" accounts, we recognize that the rights of the parties to a "tenancy in common account" differ considerably from those in a "joint tenancy" account. However, we find that the same principles apply where some of the joint tenants do not contribute their proportionate share to the account. As stated in *Idaho First Nat'l Bank v. First Nat'l Bank of Caldwell*, 81 Idaho 285, 340 P.2d 1094 (1959):

> Where money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, *the party asserting the gift must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence.* The question of intent of decedent having been raised, defendants were required to assume the burden of proof and to establish by clear and convincing evidence such elements of a gift.

81 Idaho at 295, 340 P.2d at 1100 (emphasis added); *see also In re Estate of Chase*, 82 Idaho 1, 10, 348 P.2d 473, 478 (1960), wherein we stated that the issue of Mr. Chase's intent in creating the accounts having been raised, the question was whether his daughter proved a gift to her of those bank accounts by the required clear and convincing evidence standard. Although most cases on this subject deal with deposits of funds in financial institutions, this Court held in *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975), that a survivor to an account with a stock brokerage firm is in a similar circumstance as a

survivor to a joint bank account, and must show by clear and convincing evidence that the deceased party to the account intended that the stock in the account pass to the survivor.

We agree with the trial court that the documents establishing the account are not clear as to the nature of the account and the relationship between decedent and his daughters. However, we disagree with the trial court's conclusion that the facts clearly established that the account was a tenancy in common sufficient to grant summary judgment. Construing all the facts and inferences in the record in light most favorable to the non-moving party, we conclude that the trial court erred in granting summary judgment. There remains a crucial factual issue of whether John R. Parker, by including the names of his two daughters on the account, while reserving to himself the right to withdraw all the funds on his own verbal request without the approval or knowledge of the other two depositors, intended to establish the account for business or personal convenience, rather than intending to make an immediate irrevocable gift of two-thirds of the funds in the account to his two daughters.

Decedent's will also presents a question of fact as to whether there is clear and convincing evidence that he intended an immediate irrevocable gift of the funds in the account to his daughters. The will directs his personal representative to "establish a trust and place my investments, particularly *all sums in my account* at Foster & Marshall [Shearson], Coeur d'Alene, Idaho, in the trust, for the benefit of my wife, LILLIE, for the duration of her life." (Emphasis added.) This testamentary clause is inconsistent with the claim that decedent intended the account as an immeiate irrevocable gift to his daughters, or that it was a tenancy in common, because decedent referred to the account in the will as belonging to himself. The ambiguity and uncertainty in the document establishing the Shearson account could reasonably result in an interpretation that the decedent intended to establish the account in that manner simply for his business or personal convenience.

Decedent's retention of an unlimited right to withdraw the entire account upon request without the knowledge, authorization or approval of the other two named depositors, and decedent's execution of the trust provision in the will which demonstrated an intent to retain complete control over all the funds could support a finding by the trier of fact that the joint account was intended solely for business or personal convenience reasons, and that its establishment did not constitute a present irrevocable gift of two-thirds of the account to the defendants in this action. *In re Estate of Chase*, 82 Idaho 1, 348 P.2d 473 (1960).

In the present action neither the intent of decedent nor the documents establishing the account show it was established by the parties as a tenancy in common. The Shearson agreement establishing the account does not clearly state the nature of the account, and where an ambiguity exists in the documents their interpretation is a question of fact for the trier of fact. *DeLancey v. DeLancey*, 110 Idaho 63, 714 P.2d 32 (1986). Where there is evidence or a question as to intent, the intention of the owner of an account is a question of fact. This case requires a factual determination of the circumstances surrounding the establishment of the account and the intent of the parties. In this case there are conflicting inferences raised in the record between the language of the Shearson agreement, the authorization letter, and decedent's will, which must be resolved by the jury as the trier of fact.

Considering that the law requires in summary judgment proceedings that the party opposing the motion be given the benefit of all favorable facts and inferences that might be reasonably drawn, that the court is to liberally construe facts in favor of the non-moving party, that all doubts are to be construed against the moving party, and that summary judgment must be denied if reasonable people might reach different conclusions, it is clear in this case that application of these principles to the facts presented at the summary judgment stage of the proceedings does not support grant-

ing judgment in favor of defendants as a matter of law.

Construing all the facts and inferences in the record in a light most favorable to the non-moving party, we conclude that the trial court erred in granting summary judgment. There remain genuine issues of material fact as to whether there is clear and convincing evidence of decedent's intent to make a gift of the account to defendants as "tenants in common" which can be determined only by the jury as the trier of fact. Accordingly, the summary judgment is reversed and the cause remanded to the trial court for further proceedings. Costs to appellant. No attorney fees allowed.

BAKES, C.J., and TOWLES, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring and dissenting.

### PART I.

Because of my acceptance of prior case law precedent, *In re Estate of Chase*, 82 Idaho 1, 348 P.2d 473 (1960); *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1974); *Idaho First Nat'l Bank v. First Nat'l Bank of Caldwell*, 81 Idaho 285, 340 P.2d 1094 (1959); and *Ashe v. Hurt*, 117 Idaho 266, 787 P.2d 252 (1990), it is my opinion that the summary judgment should be reversed. The evidence in the record failed to establish a gift at the time claimed, then presently and irrevocably made. The burden of proof upon the daughters was to establish such a then present gift, and their proof fell far short of meeting the requisite standard of clear and convincing evidence.

### PART II.

I cannot see that Lillie Parker's complaint is a *damage* action. It does not read like a damage action, it does not smell like a damage action, it was not designated as a damage action, and it was not a damage action. Paragraphs IV, V, VI, and VII of the Complaint succinctly stated the nature of the action:

### IV.

Pursuant to paragraph IV of the Will, Plaintiff, LILLIE B. PARKER, was bequeathed 'During her lifetime, the interest income from all my investments, in particular, all funds invested with Foster & Marshall, Coeur d'Alene, Idaho.' Further, the Will directs decedent's Personal Representatives to 'establish a trust and place my investments, particularly all sums in my account at Foster & Marshall, Coeur d'Alene, Idaho, in the trust for the benefit of my wife, Lillie, for the duration of her life.'

### V.

Upon decedent's death there was a balance of approximately $93,381.00 in the Foster & Marshall account.

### VI.

From October 10, 1984 through January 14, 1986, Defendants, MARILYN KOKOT and JANE TOFARI, as Personal Representatives of the Estate of JOHN RICHARD PARKER, paid the sum of approximately $11,000.00 for the support of Plaintiff, LILLIE B. PARKER. Since January 14, 1986 the Defendants, MARILYN KOKOT and JANE TOFARI, as Personal Representatives of the Estate of JOHN RICHARD PARKER have refused and failed to pay Plaintiff, LILLIE B. PARKER, any amounts whatsoever for her support.

### VII.

Defendants, MARILYN KOKOT and JANE TOFARI, as Personal Representatives of the Estate of JOHN RICHARD PARKER, have failed to establish a trust with the balance of the account at Foster & Marshall not paid to Plaintiff, but instead paid the balance of the account to themselves individually.

Paragraph 3 of the prayer asked:

3. For an Order of this Court ordering Defendants, MARILYN KOKOT and JANE TOFARI, to pay the sum of $98,-728.00 into trust for the benefit and sup-

port of Plaintiff, LILLIE B. PARKER, for the remainder of her life.

By erroneously describing the action as a damage action, which it assuredly is not, the district court led itself astray, and has unintentionally misguided some members of this court to the erroneous conclusion that this is not a case triable to the court, but to a jury. *See* majority opinion at 967, 793 P.2d at 199:

> However, disputed facts exist in the instant case, and it is not a court trial because a demand for jury trial had been filed. Although the estate proceeding was obviously a court trial, the answer filed in the damage action by the daughters contained a written demand for jury trial. Accordingly, for purposes of summary judgment and our review, the consolidated cases must be considered as one scheduled for jury trial requiring a factual determination of disputed facts by the trier of fact.

3. The full text of the motion to dismiss probably should be exposed for consideration:

### MOTION TO DISMISS

6. THAT the Plaintiff fails to state a cause of action against the Defendants as set forth in Paragraphs I and II of her Prayer for Relief, in that:

Paragraph IV of the Complaint sets forth the only relief to which the Plaintiff can otherwise be entitled, to wit the establishment of a trust as referenced in the Last Will and Testament of the Decedent, John Richard Parker. That by virtue of said Paragraph as pled by the Plaintiff, no individual personal interest of the Plaintiff can be forthcoming outside the bounds set forth in the said Last Will and Testament of John Richard Parker, and as specifically pled in said Paragraph IV; and

THAT No basis for attorney's fees has been made or shown either by a contract or by law and that therefore no cause of action for attorney's fees can be made to stand; and

THAT Paragraph III of the Plaintiff's prayer fails to state a cause of action unless the same be limited to the trust as a referenced in the Estate of John Richard Parker and then only under the provisions as stated in the Parker will.

R. 9–10. Paragraph 2 of the Answer states unequivocally: "That they [defendants] admit the allegations of Paragraphs I, II, III, IV, V, and VI of the Complaint." Paragraphs IV, V, VI, and VII of Lillie Parker's Complaint are hereinabove set out. The first three paragraphs of the Complaint state only:

The probate proceeding, Kootenai County Case No. 60103, was anything but a jury case. Rather it was a run-of-the-mill probate. The equitable action, Kootenai County Case No. 66719, was not triable to a jury (unless the presiding judge chose to impanel an advisory jury). Lillie Parker did not ask for a jury. Rather the mistake, if one was made, was that of the daughters in filing their answer, wherein they added a motion to dismiss. The daughters' pleading made no demand for a jury trial. A prayer of the answer, unlike any ever seen before, prayed for a *"dismissal of Paragraphs I, II, and III of the complaint for the grounds above set out and/or upon so failing for a trial by jury on all issues triable as of right by a jury."* [3] If a majority of this Court is willing to recognize that strange and incomplete language as amounting to a *demand* for a jury trial, the trial bar may well look ahead to hard times.[4]

### I.

Plaintiff, LILLIE B. PARKER, is a resident of Kootenai County, State of Idaho, and was the wife of JOHN RICHARD PARKER, Deceased, at the time of his death.

### II.

Defendant, MARILYN KOKOT, was a resident of and residing in Kootenai County, Idaho, at all times material hereto, and Defendant, JANE TOFARI, was a resident of and residing in Wisconsin, at all times material hereto. Said Defendants are also the duly appointed Personal Representatives of the Estate of JOHN RICHARD PARKER pursuant to appointment by this Court on or about October 18, 1984.

### III.

On or about October 18, 1984, this Court informally probated decedent's Will dated March 28, 1984 (Hereinafter referred to as "Will"). The Will is a valid and probatable Will pursuant to the laws of the State of Idaho.

R. 4–5. The final paragraph, VIII, stated only that the daughters had appropriated the account funds for themselves and had not set up the trust for Mrs. Parker, as Mr. Parker had directed. R. 6.

4. The daughters, in their brief filed in this Court, state a clear concession that a jury trial had not been demanded, or if made by them, at the least was waived when the stipulation was entered into. *"This being a non-jury case,* the judge is entitled to resolve inferences in that he is trier of fact." *See Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985); I.R.C.P. 52(a). Respondents' Brief at 9.

Thereafter, counsel for the daughters joined in stipulating for joinder of the probate action with Lillie Parker's equitable action, with no mention by them ever again of a jury trial. True, the district court did calendar the case for a jury trial, but equally true, it was either error or inadvertence which guided the court's pen in signing a printed form which had spaces for inserting words, which words presumably had been inserted by a clerk of the court. The daughters moved for summary judgment, and that was, should have been, and still should be, the end of any further thought of a jury trial, depending of course upon the clarity with which the Court membership sees the undisputed facts and comprehends well-established case law.

## PART III.

Our opinions in *Ashe v. Hurt*, 117 Idaho 266, 787 P.2d 252 (1990), have recently reviewed the case law attendant to the issue of establishing a gift by clear and convincing evidence. Although the majority's application of precedential case law has gone awry generally, it does correctly set aside the summary judgment which the trial court awarded to the daughters. With a proper understanding of the true nature of Lillie Parker's claim, and the applicable case law, it is much hoped that the majority will not continue to insist on visiting upon the litigants the nuisance of submitting jury instructions in a purely equitable controversy, where the inevitable result is readily apparent at this time.

## PART IV.

There is good reason to believe that this controversy is presently ripe for a decision. The action is equitable in nature. In the summary judgment proceedings both parties have presented the available facts and sufficiently cited the applicable law. The issue, based on the law heretofore made in the cases cited, *supra*, is (a) the source of the fund in question, and (b) whether Parker in setting up the Foster & Marshall account had at that time a present donative intent which then and there made his daughters owners, one-third to each, of

that fund. The answer is found in the existing case law which requires that burden of proving a gift to them is that of clear and convincing evidence. There simply is no such evidence of that category in the record.

## PART V.

The evidence before us is the same as that which was laid before the district court. The most logical inference which can be drawn from the evidence as to the occurrence of setting up the fund is that Parker had in mind at that time that *at his demise*, the account would *then* belong to his daughters. The most natural thing in the world is for a father to do that, any father. An equally natural intention on the part of aging fathers is to avoid probate taxes, expenses, and delays. Presumably, had Parker died with the Foster & Marshall account in place, his estate planning which favored the daughters would have been a success.

But, when his actions brought about the change in the account whereby, with the daughters' signed acquiescence (which may or may not have been required), he was at liberty to take all or any part of the fund on *his* own request, such evinced an understanding on the part of all three that the account which he had set up with his funds was entirely his. Thereafter, he married Lillie and made a new will, paragraph IV of which provided:

I give to my beloved wife, LILLIE, during her lifetime, the interest income from all my investments, in particular, all funds invested with Foster & Marshall, Coeur d'Alene, Idaho. (This bequest is subject to paragraph VI below.)

Further, I give my wife the right to use my personal property during her lifetime, or until her remarriage, or until she moves from our residence at 702 Walnut.

I give all the rest, residue and remainder of my estate to my children in equal shares, share and share alike, to be distributed after LILLIE's death. If either child has predeceased me, I give her share to her children in equal shares.

There should be no doubt that the terms of his will manifested what was already the fact. Unless the daughters could muster clear and convincing evidence of a gift to them, application of the source doctrine was conclusive that the fund had been his and was his at the time of his death. The daughters would eventually share in the corpus of the trust fund, but only after Lillie's death.

Idaho law is quite clear that on consideration of a motion for summary judgment, the court is allowed to enter judgment in favor of the other, non-moving party. *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981). There appears to be no obstacle in the way of our directing the entry of a final judgment in favor of Lillie Parker. Instead, the Court does again that which has been its recent wont. It properly reverses the summary judgment, but then gives directions on remand which will prolong litigation which clearly should be brought to a finish. From that I register my dissent.

JOHNSON, Justice, dissenting.

I concur with that portion of the dissenting opinion of Justice Bistline in which he points out that this was not a case that was properly triable to a jury. I believe that the opinion of the majority is incorrect to the extent that it is founded on the distinction between jury and court cases when it comes to considering the granting of summary judgment.

More fundamentally, I am unable to accept the rationale of the majority for reversing the summary judgment that was granted by the trial court. The issues stated by Mrs. Parker in her brief on appeal were: (1) whether the trial court erred in granting summary judgment "on the grounds that the investment account agreement was ambiguous" and (2) whether a genuine issue of material fact existed concerning Mr. Parker's intent that the funds in the account be used to provide for his wife after his death.

In my view, the latter of these two issues is not relevant to the disposition of this case. The important moment in time was when Mr. Parker established the account. His intent at that moment is at issue here, not his intent at any later time, such as when he signed his will after his marriage to Lillie Parker. If he had already established a tenancy in common with his daughters, he could do nothing in his will to reconvert the account to his sole ownership.

As to the first issue stated by Mrs. Parker, the trial court indicated that the ambiguity of the agreement as to whether a joint tenancy or a tenancy in common was intended did not preclude the granting of summary judgment. The trial court concluded that Mr. Parker and his daughters clearly held the account as tenants in common rather than as joint tenants. This construction was the more favorable of the two for Mrs. Parker, since if Mr. Parker and his daughters had held the account in joint tenancy, Mr. Parker's daughters would have been entitled to the entire account, rather than two-thirds.

Even the direction to Shearson signed by Mr. Parker and his daughters authorizing Shearson to issue checks to Mr. Parker in his single name on his verbal request referred to "our account" and to Mr. Parker and his daughters as "Tenants In Common." I am unable to conclude that this created a genuine issue of material fact as to Mr. Parker's intent in establishing the account.

No disputed facts came before the trial court. The only dispute was as to the inferences to be drawn from the facts. Since this was not a case that was triable to a jury, the trial court was entitled to resolve the conflict between the possible inferences from the undisputed facts. *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982). The trial court resolved the conflicting inferences by concluding that the undisputed evidence clearly established that the account was owned in equal portions by Mr. Parker and his daughters as tenants in common. I would affirm the trial court's decision.