**ESTATE of Carl REED.**

Supreme Judicial Court of Maine.

Argued Feb. 8, 1996.

Decided July 31, 1996.

Richard P. Romeo (orally), Larissa J. Shumway, Smith Elliott Smith & Garmey, P.A., Portland, for Appellants.

Philip K. Clarke (orally) George C. Schelling, Gross, Minsky, Mogul & Singal, P.A., Bangor, for Appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

Pursuant to M.R.Civ.P. 72(a) and (b), the Penobscot County Probate Court has reported the following questions:

> Whether the self-directed individual retirement account (IRA) of the decedent, Carl H. Reed, held with Raymond James & Associates, Inc., is a "multiple-party account" for the purposes of 18–A M.R.S.A. § 6–107?

> If so, does Florida, Maine, or federal law apply in determining whether the assets in decedent's IRA account are subject to the claims of creditors in the event that other assets of the estate of the decedent are insufficient to pay the debts of the estate?

Petitioners Lisa and Mark McVey contend that Carl Reed's IRA is a "multiple-party account" for purposes of 18–A M.R.S.A. § 6–107 (1981), and hence it can be brought into his estate and be accessed by his creditors. The McVeys further contend that Maine law controls the disposition of Reed's estate, including the proceeds of his IRA if brought into the estate. The personal representative of Reed's estate contends that section 6–107 does not reach Reed's IRA. She also contends that even if section 6–107 includes such accounts generally, Florida law governs administration of this particular IRA. Because we answer the first reported question in the negative, we do not reach the second question.

### Background

Carl Reed died on October 20, 1991 in an accident involving his operation of an all-terrain vehicle. Mark and Lisa McVey seek damages for themselves and their son Michael for injuries allegedly arising from that accident. The McVeys each filed claims in the Penobscot County Probate Court against Reed's estate. They subsequently filed suit in the Superior Court against Reed's estate. In the context of marshaling the assets of Reed's estate, the question arose whether the McVeys are entitled to have the probate court order the personal representative of his estate pursuant to 18–A M.R.S.A. § 6–107 to bring into the probate estate the monies deposited in Reed's self-directed IRA held

with Raymond James, Inc., a stock brokerage firm.

The parties stipulated the relevant facts, including the following:

Raymond James is a full service stock broker/dealer which, in the regular course of its business, in addition to providing brokerage/dealer services, offers its customers checking accounts and Visa cards, and permits customers to borrow against their accounts with Raymond James. These customer accommodations did not apply to IRA rollover accounts, generally, or to Reed's account, specifically. Raymond James does not hold cash for clients in interest bearing accounts.

## Discussion

Unless by clear and convincing evidence a different intention is shown, 18–A M.R.S.A. § 6–104(a) (1981) makes transfers of interest in certain types of accounts nontestamentary and therefore effective modes of non-probate transfer at death.[1] Relief from the nontestamentary transfers authorized by section 6–104 is enabled by 18–A M.R.S.A. § 6–107 (1981), if the assets of the estate are insufficient to pay the claims against the estate and the statutory allowances for the surviving spouse and children.[2]

The McVeys contend that Reed's rollover IRA[3], held with Raymond James, is a "multiple-party account" and therefore may be brought into Reed's estate to satisfy the claims of creditors pursuant to section 6–107. A "multiple-party account" is defined in 18–A M.R.S.A. § 6–101(5) (1981), that provides, in relevant part:

A 'multiple-party account' is any of the following types of account: (i) a joint account, (ii) a P.O.D. account, or (iii) a trust account.

The McVeys's argument that Reed's IRA is a multiple-party account is based on their position that his IRA fulfills the statutory definitions of both a "P.O.D. account" and a "trust account." They do not contend that Reed's IRA is a joint account.

For Reed's IRA to be either a P.O.D. account or a trust account, it must first fall within the definition of "account" as set forth in the Probate Code. "Account" is defined in 18–A M.R.S.A. § 6–101(1) (Supp.1995) as:

a contract between a customer and a financial institution in the nature of a deposit of funds primarily to be used in its banking business, whether or not insured, and includes a checking account, savings account, certificate of deposit, share account, repur-

---

1. The statute provides in relevant part:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

Subsections (b) and (c) of the statute make subsection (a) applicable also to "payable-on-death" (P.O.D.) accounts and trust accounts. 18–A M.R.S.A. § 6–104(b) & (c) (1981).

2. 18–A M.R.S.A. § 6–107 provides in relevant part:

No multiple-party account will be effective against an estate of a deceased party to transfer to a survivor sums needed to pay debts, taxes, and expenses of administration, including statutory allowances to the surviving spouse, minor children and dependent children, if other assets of the estate are insufficient.

This section is modeled on section 6–107 of the Uniform Probate Code. The Maine Probate Code is modeled on the Uniform Probate Code, and the comments to each section of the uniform

statute appear in the Maine Revised Statutes. The comment to section 6–107 states:

The sections of this Article authorize transfers at death which reduce the estate to which the surviving spouse, creditors and minor children normally must look for protection against a decedent's gifts by will. *Accordingly, it seemed desirable to provide a remedy to these classes of persons which should assure them that multiple-party accounts cannot be used to reduce the essential protection they would be entitled to if such accounts were deemed a special form of specific devise.*

Unif.Probate Code § 6–107 comment (1969) (emphasis added).

3. The IRA is a private retirement plan created by Congress in 1974 to allow tax-deferred savings. I.R.C. § 408(a) (West Supp.1996). The IRA depositor may name a beneficiary, who is exclusively entitled to the funds in the account upon the depositor's death. *Id.* A depositor may make withdrawals from his IRA prior to the age of 59 and ½, but those withdrawals are subject to a ten percent penalty tax. *Id.* §§ 72(t)(1), 72(t)(2)(A)(i) & 4974(c)(4) (1989 & West Supp. 1996).

chase agreement and other like arrangement . . .

The three basic elements of this definition are that the funds (i) be held by a "financial institution;" (ii) be "in the nature of a deposit of funds;" and (iii) be utilized by the institution "in its banking business." As the personal representative points out, "banking business" is not defined in the Probate Code. The personal representative points to 9–B M.R.S.A. § 131(5) (1980) ("Financial Institutions") for clarification.[4] Specifically, she cites the definition set forth in Title 9–B of the "business of banking": "soliciting, receiving or accepting of money or its equivalent on deposit and the loaning of money as a regular business by any person." *See* 9–B M.R.S.A. § 131(5). The Probate Code's definition of an account in 18–A M.R.S.A. § 6–101(1) requires that the specific account at issue be used in the banking business of the institution. It is stipulated that Raymond James may not loan funds held in an IRA. Accordingly, Reed's IRA is not "primarily used in [Raymond James's] banking business" and thus is not an "account" as that term is defined in section 6–101(1) of the Probate Code. Because Reed's IRA is not an "account" pursuant to section 6–101(1), it is not a "multiple party account" for the purposes of 18–A M.R.S.A. § 6–107.

We answer the first reported question in the negative.

All concurring.

---

**4.** Reference to Title 9–B, which regulates the business of financial institutions, is appropriate to help understand Article VI of the Maine Probate Code. *See* Hunt, *Maine Probate Law* § 6.01 at 338.1 (1995).